UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>DONNIE BELL, et al,<br><br>        Defendant. | Case No. 15-cr-00258-WHO<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 37, 38, 44 |

## INTRODUCTION

Count Four of the indictment in this case charges defendants Donnie Bell, Dwight Hart, and Antonio Johnson with using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The indictment alleges two crime of violence predicates for the section 924(c) charge: assault on a person assisting a federal officer in violation of 18 U.S.C. § 111 (Count Two), and robbery of government property in violation of 18 U.S.C. § 2112 (Count Three).

Defendants' motions to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), arguing that the section 924(c) charge fails to state an offense because neither of the alleged crime of violence predicates qualifies as a crime of violence under the definition set forth in 18 U.S.C. § 924(c)(3), are DENIED. For the reasons discussed below, I find that section 2112 is not a crime of violence under section 924(c)(3), but that section 111 is.

## BACKGROUND

On May 7, 2015, Bell, Hart, and Johnson were charged in a common indictment with (1) one count of conspiracy, 18 U.S.C. § 371; (2) one count of assault on a person assisting a federal officer, 18 U.S.C. § 111; (3) one count of robbery of government property, 18 U.S.C. § 2112; (4) one count of using a firearm during a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii), 924(c)(1)(B); (5) one count of felon in possession of a firearm, 18 U.S.C. § 922(g); and

United States District Court<br>Northern District of California

1    (6) one count of possession of an unregistered firearm, 26 U.S.C. § 5861(d).  Dkt. No. 14 ¶¶ 1-9.

2    The alleged crime of violence predicates for the section 924(c) charge are the assault in violation

3    of section 111 (Count 2) and the robbery in violation of section 2112 (Count 3).

4        Bell and Hart filed separate motions to dismiss on November 18 and 19, 2015.  Dkt. Nos.

5    37-38.  On December 2, 2015, Johnson filed a motion for joinder in the motions to dismiss.  Dkt.

6    No. 44.[1]  I heard argument from the parties on January 7, 2016.  Dkt. No. 52.

7                                    **DISCUSSION**

8        Section 924(c)(1)(A) provides for certain penalties for a person "who, during and in

9    relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such

10   crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A).  Under section 924(c)(3), a "crime of

11   violence" in this context means

12           an offense that is a felony and (A) has as an element the use,
             attempted use, or threatened use of physical force against the person
13           or property of another, or (B) that by its nature, involves a
             substantial risk that physical force against the person or property of
14           another may be used in the course of committing the offense.

15   18 U.S.C. § 924(c)(3).  Courts generally refer to the "(A)" clause of section 924(c)(3) as the "force

16   clause" and to the "(B)" clause of section 924(c)(3) as the "residual clause."

17       Defendants contend that neither of the offenses underlying their section 924(c) charge

18   qualifies as a crime of violence under section 924(c)(3), and that as a result the section 924(c)

19   charge must be dismissed.  Specifically, defendants contend that neither section 111 nor section

20   2112 is a crime of violence under the force clause, and that under the Supreme Court's recent

21   ruling in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), the residual clause is

22   unconstitutionally vague and thus cannot be used to support the section 924(c) charge against

23   them.

24   **I.    FORCE CLAUSE**

25       I begin with the force clause, which, as stated above, defines "crime of violence" to include

26   a felony offense that "has as an element the use, attempted use, or threatened use of physical force

27   _____

28   [1] Johnson's motion for joinder, Dkt. No. 44, is GRANTED.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    against the person or property of another."  18 U.S.C. § 924(c)(3)(A).

2          To determine whether an offense qualifies as a "crime of violence" under section

3    924(c)(3), the Ninth Circuit applies the "categorical approach" set forth in *Taylor v. United States*,

4    495 U.S. 575 (1990).  *See United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006) ("In

5    the context of crime of violence determinations under section 924(c), our categorical approach

6    applies regardless of whether we review a current or prior crime."); *United States v. Amparo*, 68

7    F.3d 1222, 1225-26 (9th Cir. 1995); *United States v. Mendez*, 992 F.2d 1488, 1490-92 (9th Cir.

8    1993); *United States v. Springfield*, 829 F.2d 860, 862-63 (9th Cir. 1987).

9          A court applying the categorical approach must "determine whether the [offense] is

10   categorically a 'crime of violence' by comparing the elements of the [offense] with the generic

11   federal definition" – here, the definition of "crime of violence" set forth in the section 924(c)(3)

12   force clause.  *United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015).  This

13   process requires the court to "look to the elements of the offense rather than the particular facts

14   underlying the defendant's own [case]."  *United States v. Dominguez-Maroyoqui*, 748 F.3d 918,

15   920 (9th Cir. 2014).  Because the categorical approach is concerned only with what conduct the

16   offense necessarily involves, the court "must presume that the [offense] rest[s] upon nothing more

17   than the least of the acts criminalized, and then determine whether even those acts are

18   encompassed by the generic federal offense."  *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)

19   (internal quotation marks and alterations omitted).  If the elements of the offense "criminalize a

20   broader swath of conduct" than the conduct covered by the generic federal definition, the offense

21   cannot qualify as a crime of violence, even if the particular facts underlying the defendant's own

22   case might satisfy that definition.  *Dominguez-Maroyoqui*, 748 F.3d at 920 (internal quotation

23   marks omitted).

24         In ascertaining the scope of conduct criminalized by the elements of an offense, the court

25   considers not only the statutory language, "but also the interpretation of that language in judicial

26   opinions."  *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1054 (9th Cir. 2011) (internal

27   quotation marks omitted).  To find an offense overbroad, there must be a "realistic probability, not

28   a theoretical possibility," that the statute would be applied to conduct not encompassed by the

1    generic federal definition.  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *accord United*

2    *States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013) (applying the "realistic probability"

3    standard to a crime of violence determination under section 924(c)(3)).

4         In a case involving a "divisible" statute, the court may also go beyond the categorical

5    approach and apply the "modified categorical approach," which allows the court "to examine a

6    limited class of documents to determine which of a statute's alternative elements formed the basis

7    of the defendant's prior conviction."  *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013)

8    (internal quotation marks omitted).  A statute is "divisible" when it contains "multiple, alternative

9    *elements* of functionally separate crimes," *Rendon v. Holder*, 764 F.3d 1077, 1084-85 (9th Cir.

10   2014) (emphasis in original), as opposed to just "alternative means of committing the same

11   crime," *Almanza-Arenas v. Lynch*, 2015 WL 9462976, at *5 (9th Cir. Dec. 28, 2015).  "[T]he key

12   question [the court] must ask when determining a statute's divisibility is whether a jury would

13   have to be unanimous in finding those separate elements."  *Ramirez v. Lynch*, 2016 WL 239661, at

14   *5 (9th Cir. Jan. 20, 2016).

15        Defendants focus their arguments regarding the section 924(c)(3) force clause on the

16   specialized meanings that have been given to the terms "physical force" and "use."  In *Johnson v.*

17   *United States*, 559 U.S. 133 (2010) ("*Johnson I*"), the Supreme Court considered whether a

18   conviction for simple battery under Florida law qualifies as a "violent felony" under the force

19   clause of the Armed Career Criminal Act ("ACCA").  The ACCA force clause, like the section

20   924(c)(3) force clause, defines "violent felony" to include a felony offense that "has as an element

21   the use, attempted use, or threatened use of physical force against the person of another."  18

22   U.S.C. § 924(2)(B)(i).[2]  The Court held that to satisfy this definition, the physical force required

23   by the offense must be "*violent* force – that is, force capable of causing physical pain or injury to

24   another person."  559 U.S. at 140 (emphasis in original).  The Court observed that "even by itself,

25   the word 'violent' in section 924(e)(2)(B) connotes a substantial degree of force . . . When the

26   adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even

27

28   _____

[2] This is the exact same language as the section 924(c)(3) force clause, except that it refers only to the "person of another," as opposed to the "person or property of another."

4

1    clearer." *Id.*

2          The Ninth Circuit has since extended this definition of "physical force" to other generic

3    offense provisions, including 18 U.S.C. § 16(a) and U.S.S.G. § 2L1.2, both of which define "crime

4    of violence" using language that is identical or essentially identical to that used in the ACCA force

5    clause and the section 924(c)(3) force clause.[3]  *See, e.g., United States v. Dominguez-Maroyoqui*,

6    748 F.3d 918, 920-21 (9th Cir. 2014) (U.S.S.G. § 2L1.2); *United States v. Flores-Cordero*, 723

7    F.3d 1085, 1087 (9th Cir. 2013) (U.S.S.G. § 2L1.2); *Rodriguez-Castellon v. Holder*, 733 F.3d 847,

8    854 (9th Cir. 2013) (18 U.S.C. § 16(a)).  A number of other courts have extended the *Johnson I*

9    definition of "physical force" to the section 924(c)(3) force clause.  *See, e.g., United States v.*

10   *Davis*, No. 15-cv-20564, 2015 WL 8311538, at *1 (E.D. Mich. Dec. 9, 2015); *United States v.*

11   *Merinord*, No. 15-cr-00136, 2015 WL 6457166, at *3 (E.D.N.C. Oct. 26, 2015); *United States v.*

12   *Cruz-Rivera*, No. 15-cr-00486, 2015 WL 6394416, at *1 (D.P.R. Oct. 21, 2015); *United States v.*

13   *Evans*, No. 15-cr-00057, 2015 WL 6673182, at *4-5 (E.D.N.C. Oct. 20, 2015).  The government

14   does not dispute that "physical force" under the section 924(c)(3) force clause carries the same

15   meaning as under the ACCA force clause, and I apply that meaning here.

16          Finally, for a defendant to "use" violent force for the purposes of a crime of violence

17   determination, the defendant must do so intentionally, not just recklessly or negligently.  *See*

18   *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015); *Fernandez-Ruiz v. Gonzales*, 466

19   F.3d 1121, 1132 (9th Cir. 2006); *see also Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("The key

20

21   _____

     [3] 18 U.S.C. § 16(a) defines "crime of violence" as "an offense that has as an element the use,
22   attempted use, or threatened use of physical force against the person or property of another."  18
     U.S.C. § 16(a).  Under U.S.S.G. § 2L1.2, "crime of violence" means

23
                 [m]urder, manslaughter, kidnapping, aggravated assault, forcible sex
24               offenses (including where consent to the conduct is not given or is
                 not legally valid, such as where consent to the conduct is
25               involuntary, incompetent, or coerced), statutory rape, sexual abuse
                 of a minor, robbery, arson, extortion, extortionate extension of
26               credit, burglary of a dwelling, *or any other offense under federal,*
                 *state, or local law that has as an element the use, attempted use, or*
27               *threatened use of physical force against the person of another*.

28   U.S.S.G. 2L1.2 (emphasis added).

United States District Court
Northern District of California

phrase in [18 U.S.C. § 16(a)] – the 'use . . . of physical force against the person or property of another' – most naturally suggests a higher degree of intent than negligent or merely accidental conduct.").

With this framework in mind, I turn to the alleged crime of violence predicates at issue here, assault in violation of 18 U.S.C. § 111 and robbery in violation of 18 U.S.C. § 2112.

### A.    18 U.S.C. § 111

Count Two charges defendants with violating 18 U.S.C. § 111.  The statute contains an "(a)" subsection and a "(b)" subsection and provides in whole:

> (a) In general.  Whoever
>
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
>
> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.  Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.

The Ninth Circuit has held that section 111 creates three separate offenses.  *Dominguez-Maroyoqui*, 748 F.3d at 919-20 (identifying the three section 111 offenses under a prior but substantially similar version of the statute); *United States v. Chapman*, 528 F.3d 1215, 1218 (9th Cir. 2008) (same).  Under the current (and applicable) version of section 111, those three offenses are (1) a misdemeanor under section 111(a) if the defendant's acts constitute "only simple assault;" (2) a felony with a maximum sentence of 8 years under section 111(a) if the defendant's acts "involve physical contact with the victim of that assault or the intent to commit another

United States District Court
Northern District of California

United States District Court
Northern District of California

1  felony;" and (3) a felony with a maximum sentence of 20 years under section 111(b) if the

2  defendant "uses a deadly or dangerous weapon . . . or inflicts bodily injury."  *See* 18 U.S.C. § 111;

3  *see also United States v. Stoddard*, 407 F. Appx. 231, 232 (9th Cir. 2011).[4]

4        The section 111(a) misdemeanor is obviously not a crime of violence under the section

5  924(c)(3) force clause, because to qualify as a crime of violence under section 924(c)(3), the

6  offense must be a felony.  *See* 18 U.S.C. § 924(c)(3).

7        Under recent Ninth Circuit precedent, the section 111(a) felony is not a crime of violence

8  either.  In *United States v. Dominguez-Maroyoqui*, the Ninth Circuit considered whether a prior

9  version of the section 111(a) felony qualifies as a crime of violence for the purposes of U.S.S.G. §

10  2L1.2.[5]  748 F.3d at 919.  Applying the categorical approach and the *Johnson I* definition of

11  physical force, the court of appeals held that the section 111(a) felony does not "ha[ve] as an

12  element the use, attempted use, or threatened use of physical force against the person of another,"

13  because while the section 111(a) felony requires "at least some form of assault," it does not

_____

[4] In his reply brief, Hart states in a footnote that Count Two is duplicitous because it charges all three section 111 offenses.  Hart Reply at 2 n.1 (Dkt. No. 48).  "An indictment is duplicitous where a single count joins two or more distinct and separate offenses.  One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense."  *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (internal quotation marks and citations omitted).  Because Hart only raised this issue in his reply brief and has not requested dismissal of the indictment or any other remedy based on the alleged duplicity, I do not address the issue here.

[5] The relevant version of section 111(a) provided in relevant part:

    (a) In General.  Whoever:

    (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

    (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

    shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

*Dominguez-Maroyoqui*, 748 F.3d at 920 n.2.

7

require that "any particular level of force be used." *Id.* at 921 (internal quotation marks omitted). "To obtain a section 111(a) felony conviction, then, the government need not prove, and an adjudicator need not find, that the offense involved violent force capable of causing physical pain or injury." *Id.* The court of appeals concluded that the section 111(a) felony is not categorically a crime of violence, and that section 111(a) is not divisible. *Id.* at 921-22. While *Dominguez-Maroyoqui* concerned a prior version of section 111(a), the government does not dispute that the decision's reasoning also precludes characterization of the current version of the section 111(a) felony as a crime of violence under the section 924(c)(3) force clause.

This leaves section 111(b) as a possible crime of violence predicate. In *United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009), the Ninth Circuit held that section 111(b) is categorically a crime of violence under 18 U.S.C. § 16(a).[6] *Id.* at 946-48. It began by identifying two variants of the section 111(b) offense: "(1) assault involving a deadly or dangerous weapon, and (2) assault resulting in bodily injury." *Id.* at 947. It defined "deadly or dangerous weapon" as "any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person," and "assault" as either (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another" combined with "an apparent present ability" and a resulting "reasonable apprehension of immediate bodily harm." *Id.* (internal quotation marks omitted). It then reasoned:

> A defendant charged with the first variant, assault with a deadly or a dangerous weapon, must have always "threatened the use of physical force," 18 U.S.C. § 16(a), because he or she will have either made a "wilful attempt to inflict injury" or a "threat to inflict injury" . . . with an object that "may endanger the life of or inflict great bodily harm on a person." . . . Similarly, a defendant charged under the second variant, assault resulting in bodily injury, necessarily must have committed an act of force in causing the injury. Thus, both variants are "crimes of violence" pursuant to 18 U.S.C. § 16(a).

*Id.* at 948 (internal alterations omitted).

---

[6] *Juvenile Female* also held that section 111(b) is a crime of violence under 18 U.S.C. § 16(b), which defines "crime of violence" using language identical to the section 924(c)(3) residual clause. *See Juvenile Female*, 566 F.3d at 947-48. I address the section 924(c)(3) residual clause in more detail below.

1    Defendants acknowledge that *Juvenile Female* squarely contradicts their position but

2    contend that the case is no longer good law under *Johnson I*.  In the Ninth Circuit, where

3    intervening Supreme Court authority "undercut[s] the theory or reasoning underlying [a] prior

4    circuit precedent in such a way that the cases are clearly irreconcilable," a district court "should

5    consider [itself] bound by the intervening higher authority and reject the prior [circuit precedent]

6    as having been effectively overruled."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

7    Defendants argue that the reasoning in *Juvenile Female* is defective under *Johnson I* because it

8    does not address the particular level of force – i.e., violent or nonviolent – that a person must have

9    used to be convicted under section 111(b).  *See* Bell Mot. at 10 (Dkt. No. 38).

10    Defendants are correct that *Juvenile Female* did not explicitly identify the particular level

11    of force required for a section 111(b) conviction.  *See* 566 F.3d at 946-48.  However, while

12    *Juvenile Fem*ale did not *explicitly state* that section 111(b) requires the use of "violent force," the

13    Ninth Circuit by that time had already established a "violent force" requirement under 18 U.S.C. §

14    16 and similar generic offense provisions.  *See, e.g., Sareang Ye v. I.N.S.*, 214 F.3d 1128, 1133

15    (9th Cir. 2000) (holding that "the force necessary to constitute a crime of violence [under 18

16    U.S.C. § 16] must actually be violent in nature") (internal quotation marks omitted); *Ortega-*

17    *Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006) (same); *Valencia v. Gonzales*, 439 F.3d

18    1046, 1049 (9th Cir. 2006) (same); *Singh v. Ashcroft*, 386 F.3d 1228, 1233 (9th Cir. 2004) (same);

19    *see also United States v. Gonzalez-Perez*, 472 F.3d 1158, 1160 (9th Cir. 2007) (same, with respect

20    to U.S.S.G. § 2L1.2); *United States v. Cortez-Arias*, 403 F.3d 1111, 1115 (9th Cir. 2005) (same).

21    Since the Supreme Court issued its opinion in *Leocal v. Ashcroft*, the Ninth Circuit has

22    occasionally linked this "violent force" requirement to the statement in *Leocal* that the language of

23    18 U.S.C. § 16 "suggests a category of violent, active crimes."[7]  *Leocal*, 543 U.S. at 11; *see, e.g.,*

24    *Ortega-Mendez*, 450 F.3d at 1016 ("Consistent with *Leocal*, we have squarely held that the force

25    necessary to constitute a crime of violence under 18 U.S.C. § 16(a) must actually be violent in

26

27    ───────────────────────

[7] Likewise, the Supreme Court in *Johnson I* relied in part on this statement from *Leocal* in

28    determining that physical force under the ACCA force clause means violent physical force.  *See*
*Johnson I*, 559 U.S. at 140.

United States District Court
Northern District of California

nature.") (internal quotation marks and alterations omitted).  The "crime of violence" analysis in *Juvenile Female* begins by quoting this same statement.  *See Juvenile Female*, 566 F.3d at 947. This seriously undermines the claim that *Johnson I* amounts to intervening Supreme Court authority undercutting the reasoning of *Juvenile Female*.  *See Miller*, 335 F.3d at 900; *see also United States v. Flores-Mejia*, 687 F.3d 1213, 1215 (9th Cir. 2012) (rejecting the argument that an intervening state high court decision was "clearly irreconcilable" with a prior circuit case, where the state high court decision "appears to have done nothing more than confirm [the state's] definition of robbery – a definition that existed when we decided [the prior circuit case]").  It is not within my purview to reconsider Ninth Circuit precedent merely because it is written in a manner that is not to a party's liking.

Further, while I share some of defendants' concerns over the breadth of conduct criminalized under section 111(b),[8] I find that the analysis in *Juvenile Female* is at least roughly in line with a number of Ninth Circuit decisions (from both before *Johnson I* and after) rejecting crime of violence and violent felony challenges to battery and assault statutes that require either the use of a deadly or dangerous weapon or some level of resulting bodily injury.  *See United States v. Lawrence*, 627 F.3d 1281, 1284-87 (9th Cir. 2010) (holding that a state statute criminalizing the "reckless infliction of substantial bodily harm in the course of an intentional assault" is a violent felony under the ACCA force clause; citing *Juvenile Female* for the proposition that "assault statutes penalizing intentional conduct that results or is likely to result in such bodily injury necessarily require force that goes beyond the least touching and represents actual force that is violent in nature") (internal quotation marks and alterations omitted); *United*

---

[8] For example, to be convicted under the section 111(b) "bodily injury" variant, the defendant must have intended to commit the assault, *Juvenile Female*, 566 F.3d at 947, but he need not have intended to inflict the bodily injury, *United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997).  Under Ninth Circuit precedent, whether the bodily injury was inflicted by the defendant is determined by whether the bodily injury was part of the "natural and probable consequences" of the assault.  *Id.* at 1268-69.  The upshot is that, at least in theory, a person could be convicted under section 111(b) for committing an intentional assault that uses less than violent force but that results in an unintentional bodily injury.  *Cf. United States v. Jackson*, 310 F.3d 554, 555-57 (7th Cir. 2002) (affirming a section 111(b) conviction based on evidence that the defendant resisted arrest by "squirm[ing] and twist[ing] as hard as he could" and one deputy marshal "who tried to handcuff [the defendant's] hands behind his back . . . tore a ligament in his right thumb during the struggle").

1  *States v. Jennen*, 596 F.3d 594, 601 (9th Cir. 2010) ("Our conclusion that unconsented touching

2  with a firearm requires 'the use, attempted use, or threatened use of physical force' compels the

3  conclusion that unlawful touching using a deadly weapon does too."); *United States v. Laurico-*

4  *Yeno*, 590 F.3d 818, 822 (9th Cir. 2010) ("[California Penal Code § 273.5] does not penalize

5  minimal, nonviolent touchings.  It penalizes the intentional use of force that results in a traumatic

6  condition.  This . . . covers a category of 'violent, active crimes.'"); *United States v. Grajeda*, 581

7  F.3d 1186, 1192 (9th Cir. 2009) ("[E]ven the 'least touching' with a deadly weapon or

8  instrument . . . is violent in nature and demonstrates at a minimum the threatened use of actual

9  force.").

10        Defendants make no attempt to distinguish these or other similar decisions, or to identify

11  real-world examples of section 111(b) being applied in a manner that is beyond the scope of

12  "crime of violence" as defined in the section 924(c)(3) force clause.  *See Lawrence*, 627 F.3d at

13  1287 (acknowledging that "[i]t may be possible to dream up unusual scenarios in which a

14  nonviolent act, such as spitting, could thereby result in substantial bodily injury," but nonetheless

15  holding that the defendant's conviction was for a crime of violence, where the defendant did not

16  claim that his own conduct involved nonviolent conduct and did not point to any case applying the

17  statute of conviction to nonviolent conduct) (internal quotation marks omitted); *Laurico-Yeno*, 590

18  F.3d at 822 (rejecting the defendant's claim that "a nonviolent least touching" could result in a

19  conviction under a state statute "penaliz[ing] the intentional use of force that results in a traumatic

20  condition," where the defendant was "unable to identify a single . . . case resulting from a

21  nonviolent use of force") (internal quotation marks omitted).

22        For all these reasons, I am not convinced that *Juvenile Female* has been effectively

23  overruled by *Johnson I* merely because it did not explicitly identify the particular level of force

24  required under section 111(b).  *See Miller*, 335 F.3d at 900.

25        I am also unpersuaded by defendants' claim that *Juvenile Female* has been effectively

26  overruled because it fails to take into account the distinction between "causing injury" and "using

27  force."  *See* Bell Mot. at 11-13; Bell Reply at 2-3 (Dkt. No. 50).  As an initial matter, defendants

28  fail to articulate what this argument has to do with *Johnson I*.  Again, I may only reject *Juvenile*

*Female* as effectively overruled if the case is clearly irreconcilable with intervening Supreme Court authority. *See Miller*, 335 F.3d at 900. To the extent that the reasoning in *Juvenile Female* has not been undercut by such authority, I remain bound by the decision.

In any event, defendants' causing-injury versus using-force argument lacks merit. It is based principally on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), in which the Fourth Circuit held that a criminal threats conviction under California Penal Code § 422(a) is not categorically a crime of violence under U.S.S.G. § 2L1.2. 701 F.3d at 167-171. A person violates section 422(a) when he, in relevant part, "willfully threatens to commit a crime which will result in death or great bodily injury to another person." Cal. Penal Code § 422(a). The Fourth Circuit held that this language does not define a crime of violence because an offense may *result* in death or great bodily injury without involving the *use* of physical force. 701 F.3d at 168. "For example, a defendant can violate [section 422(a)] by threatening to poison another, which involves no use or threatened use of force." *Id.* at 168-69.

Critically, in reaching this conclusion, *Torres-Miguel* distinguished the Ninth Circuit's decision in *United States v. Villavicencio-Burruel*, 608 F.3d 556 (9th Cir. 2010), which held that section 422(a) *is* categorically a crime of violence under U.S.S.G. § 2L1.2. *Villavicencio-Burruel* remains binding law in this Circuit. *See United States v. Calderon-Jimenez*, 2016 WL 146419, at *2 (9th Cir. Jan. 7, 2016) (rejecting, as foreclosed by *Villavicenio–Burruel*, the defendant's contention that section 422(a) is not a crime of violence); *United States v. Zetina-Sandoval*, 568 F. Appx. 498 (9th Cir. 2014) (same); *United States v. Hernandez-Perez*, 473 F. Appx. 584, 585 (9th Cir. 2012) (same). Moreover, the reasoning in *Torres-Miguel* – which relies on the notion that an indirect application of force between defendant and victim does not qualify as "using" physical force for the purposes of a crime of violence determination – was rejected by the Supreme Court in *United States v. Castleman*:

> [T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force . . . The District Court thought otherwise, reasoning that one can cause bodily injury "without the 'use of physical force'" – for example, by "deceiving the victim into drinking a poisoned beverage, without making contact of any kind."
>
> [ . . . ]

12

[But] the knowing or intentional application of force is a "use" of force. [Defendant] is correct that under *Leocal*, the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." But he errs in arguing that although "poison may have 'forceful physical properties' as a matter of organic chemistry, no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink." The "use of force" in [defendant's] example is not the act of "sprinkling" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

134 S. Ct. 1405, 1414-15 (2014) (internal citations and alterations omitted).

*Castleman* addressed a conviction under 18 U.S.C. § 922(g)(9), which, under *Castleman*, requires a lower level of physical force than section 924(c)(3). *See* 134 S. Ct. at 1413. Nevertheless, a number of courts have applied this particular aspect of *Castleman* in the section 924(c)(3) context. *See, e.g., United States vs. Checora*, No. 14-cr-00457, 2015 WL 9305672, at *4 (D. Utah Dec. 21, 2015); *United States v. Morgan*, No. 14-cr-20610, 2015 WL 9463975, at *2 n.3 (E.D. Mich. Dec. 18, 2015); *United States v. McDaniels*, No. 15-cr-00171, 2015 WL 7455539, at *5 (E.D. Va. Nov. 23, 2015); *Cruz-Rivera*, 2015 WL 6394416, at *4. They have done so for good reason. While *Castleman* held that 18 U.S.C. § 922(g)(9) requires a lower level of physical force than section 924(c)(3), this particular aspect of *Castleman* concerns not the level of physical force required under 18 U.S.C. § 922(g)(9), but rather what it means to "use" physical force for the purposes of the statute. I see no material differences between 18 U.S.C. § 922(g)(9) and section 924(c)(3) in this regard.

In sum, *Juvenile Female* remains binding on this Court and forecloses the argument that section 111(b) is not a crime of violence.

Because section 111(a) is not a crime of violence under the section 924(c)(3) force clause, but section 111(b) is, Count Two may serve as a predicate crime of violence for the section 924(c) charge so long as section 111 is a divisible statute subject to the modified categorical approach, and defendants are charged under section 111(b). Given that the Ninth Circuit has squarely held that section 111 "creates three separate offenses" with three different punishments, *Dominguez-*

1   *Maroyoqui*, 748 F.3d at 919, I have no trouble concluding that the statute is divisible.  Count Two

2   clearly charges defendants under section 111(b).  *See* Dkt. No. 14 ¶ 5.  Accordingly, Count Two

3   may serve as a predicate crime of violence for the section 924(c) charge.

4           **B.    18 U.S.C. § 2112**

5           Count Three charges defendants with violating 18 U.S.C. § 2112, "the general robbery-of-

6   government-property statute."  *United States v. Rivera*, 521 F.2d 125, 128 (2d Cir. 1975).  Section

7   2112 provides that "[w]hoever robs or attempts to rob another of any kind or description of

8   personal property belonging to the United States, shall be imprisoned not more than fifteen years."

9   18 U.S.C. § 2112.  The statute does not define "to rob," and courts have given the term its

10  common law meaning, i.e., "the felonious taking of property from the person of another by

11  violence or by putting him in fear."  *Norris v. United States*, 152 F.2d 808, 809 (5th Cir. 1946);

12  *accord United States v. Torres*, 809 F.2d 429, 433 (7th Cir. 1987); *Rivera*, 521 F.2d at 128 n.5;

13  *Rutkowski v. United States*, 149 F.2d 481, 482 (6th Cir. 1945).  Neither party cites any authority

14  directly addressing whether section 2112 qualifies as a crime of violence or violent felony under

15  any of the generic offense provisions, and I have not found any.[9]

16          Defendants argue that section 2112 is not a crime of violence under the section 924(c)(3)

17  force clause because even when physical force is used to commit a section 2112 robbery, the

18  amount of physical force required under the statute falls short of violent force within the meaning

19  of *Johnson I*.  Defendants cite to *United States v. Rodriguez*, 925 F.2d 1049 (7th Cir. 1991), which

20  affirmed a conviction for aggravated robbery of a United States Postal Service Carrier in violation

21

22

23

24  [9] In *United States v. Mendez*, the Ninth Circuit held that conspiracy to commit Hobbs Act robbery

25  in violation of 18 U.S.C. § 1951 is a crime of violence under the section 924(c)(3) residual clause.
    992 F.2d at 1491-92.  The case does not address whether conspiracy to commit Hobbs Act robbery

26  is a crime of violence under the section 924(c)(3) force clause.  *See id.*  In *United States v. Melton*,
    344 F.3d 1021 (9th Cir. 2003), the Ninth Circuit held that a robbery conviction under Virginia

27  law, which applies the "common law definition of robbery," is a violent felony under the ACCA
    force clause.  *Id.* at 1025-26.  Because the analysis in *Melton* is based on the "common law

28  definition of robbery as it has been articulated by the Virginia courts," *id.* at 1026, I do not find the
    case especially instructive here.

of 18 U.S.C. § 2114.[10]   That statute, like section 2112, uses "the word 'rob'. . . in its common law

sense." *Rodriguez*, 925 F.2d at 1052; *see also Carter v. United States*, 530 U.S. 255, 267 n.5

(2000) (noting that in statutes such as section 2112 and section 2114, Congress "simply punished

'robbery'. . . , thereby leaving the definition of the[] term[] to the common law").   The evidence at

trial showed that the victim "carried his keys inside his pocket, attached to a chain that in turn was

attached to his belt by a leather loop," and that, in taking the keys, the defendant "grabbed the key

chain, pulled it once or twice, and 'popped the loop on the holder.'"[11]   *Rodriguez*, 925 F.2d at

1051.   The Seventh Circuit found that this amounted to a sufficient showing of force to support the

"robbery element" of the defendant's conviction:

> Although the amount of force or violence used to take the keys from
> [the victim] was rather minimal, there was sufficient evidence for a
> rational trier of fact to conclude that a robbery did occur. [The
> victim's] key chain was attached to his clothing, and [the defendant]
> had to pull the chain once or perhaps twice to snatch the keys.
> Courts have upheld robbery convictions when the item taken is so
> attached to the person or his clothes as to require some force to
> effect its removal.

*Id.* at 1052 (internal quotation marks and footnotes omitted); *see also United States v. Depass*, 510

F. Appx. 119, 120-21 (3d Cir. 2013) (finding sufficient evidence to support a conviction for

---

[10] The version of 18 U.S.C. § 2114 in effect at the time stated in relevant part:

> Whoever assaults any person having lawful charge, control, or
> custody of any mail matter or of any money or other property of the
> United States, with intent to rob, steal, or purloin such . . . property
> of the United States, or robs any such person of . . . property of the
> United States, shall, for the first offense, be imprisoned not more
> than ten years; and if in effecting or attempting to effect such
> robbery he wounds the person having custody of such . . . property
> of the United States, or puts his life in jeopardy by the use of a
> dangerous weapon, . . . shall be imprisoned not more than twenty
> five years.

*Rodriguez*, 925 F.2d at 1051 n.2.

[11] The evidence at trial also showed that the defendant's co-conspirator subsequently "threatened [the victim] with [a] gun." *Rodriguez*, 925 F.2d at 1051.  However, the Seventh Circuit did not consider this conduct in determining whether there was sufficient evidence of robbery, apparently because it concluded that the co-conspirator did not threaten the victim with the gun until after the robbery had been completed.  *See id.* at 1052-53.

United States District Court
Northern District of California

1   robbery under 18 U.S.C. § 2114 where the defendant "pushed [the victim] from behind, entered

2   the back of the vehicle, and grabbed the package").

3           The government does not address *Rodriguez* in its opposition brief.  The government cites

4   to *Mendez* and *Melton*, discussed above, as well as to a series of recent out-of-circuit district court

5   cases holding that Hobbs Act robbery under 18 U.S.C. § 1951 is a crime of violence under the

6   section 924(c)(3) force clause.  *See* Opp. at 3-4 (Dkt. No. 47).  But the government offers no

7   explanation of why the amount of physical force required for a section 2112 conviction is

8   sufficient to satisfy *Johnson I*.  *See id.*

9           Faced with no on-point authority and an extremely limited body of case law regarding

10  section 2112, I agree with defendants that *Rodriguez* establishes a realistic probability that section

11  2112 could be applied to nonviolent conduct.  The case reflects the common law rule that there is

12  "sufficient force to constitute robbery [where] the property is so attached to the victim's person or

13  clothing as to create resistance to the taking."  *People v. Patton*, 76 Ill. 2d 45, 49 (1979); *see also* 3

14  Substantive Criminal Law § 20.3 (2d ed. 2015) (removing an article of value attached to the

15  owner's person or clothes "is not robbery unless the article in question . . . is so attached to the

16  person or his clothes as to require some force to effect its removal"); 4 Wharton's Criminal Law §

17  465 (15th ed. 2015) (force is sufficient to constitute robbery "if the property is so attached to the

18  person or clothing of the victim that resistance to the snatching is thereby created"); *People v.*

19  *Campbell*, 234 Ill. 391, 392-93 (1908) ("if the article is so attached to the person or clothes as to

20  create resistance, however slight, . . . the taking is robbery").

21          The amount of force necessary to commit a section 2112 robbery under this rule is less

22  than violent force.  In *United States v. Flores-Cordero*, 723 F.3d 1085 (9th Cir. 2013), the Ninth

23  Circuit considered whether an Arizona resisting arrest statute qualified as a crime of violence

24  under U.S.S.G. § 2L1.2.  *Id.* at 1085-86.  The Arizona statute defined resisting arrest in relevant

25  part as "[u]sing or threatening to use physical force against the peace officer or another."  *Id.* at

26  1087.  The Arizona Court of Appeals had found that the statute applied to a defendant who

27  "kicked the officers trying to control her," thereby creating a "minor scuffle," but not injuring

28  anyone.  *Id.* at 1087-88.  The Ninth Circuit found that this conduct "did not necessarily involve

United States District Court
Northern District of California

16

1    force capable of inflicting pain or causing injury as contemplated by the Supreme Court's

2    definition of violence in [*Johnson I*]." *Id.* at 1088.  Accordingly, it held that the statute "cannot be

3    considered categorically a crime of violence under [U.S.S.G § 2L1.2]." *Id.*

4            The amount of force used by the defendant in *Rodriguez* was no more than the amount of

5    force involved in kicking one's arresting officers and causing a "minor scuffle." *See Flores-*

6    *Cordero*, 723 F.3d at 1087-88.  The defendant in *Rodriguez* "popped" a leather loop attaching a

7    key chain to a belt by grabbing the key chain and pulling it once or twice.  925 F.2d at 1051.  The

8    Seventh Circuit found it sufficient that the victim's keys were "attached to his clothing," and that

9    the defendant "had to pull the chain once or perhaps twice to snatch the keys." *Id.* at 1052.

10   Nobody was injured as a result of the defendant's use of force, and there is no indication that

11   anyone was threatened with physical pain or injury as a result of his act of snatching the keys. *See*

12   *id.* at 1050-51.  In particular in light of *Flores-Cordero*, the defendant in *Rodriguez* cannot be said

13   to have used violent force within the meaning of *Johnson I*. *See* 559 U.S. at 140; *see also*

14   *Dominguez-Maroyoqui*, 748 F.3d at 921 (characterizing as nonviolent force one case in which the

15   defendant was convicted for walking up to a prosecutor and "jolting her arm and shoulder," and

16   another in which the defendant was convicted for "grabbing" a federal agent's jacket); *United*

17   *States v. Hollins*, 514 F. Appx. 264, 266-69 (3d Cir. 2013) (holding that a Pennsylvania robbery

18   statute making it a crime to "physically take[] or remove[] property from the person of another by

19   force however slight" does not have a violent force element; stating that, under *Johnson I*,

20   "robbery by force, however slight, no longer satisfies [the force clause] definition of a crime of

21   violence").  Accordingly, robbery of government property under section 2112 is not categorically

22   a crime of violence under the section 924(c)(3) force clause.

23           This raises the question of whether section 2112 is divisible.  It is not.  In *United States v.*

24   *Dixon*, the Ninth Circuit addressed the divisibility of California Penal Code § 211, which defines

25   robbery in essentially the same terms as the common law, i.e., "the felonious taking of personal

26   property in the possession of another, from his person or immediate presence, and against his will,

27   accomplished by means of force or fear."  Cal. Penal Code § 211.  The Ninth Circuit observed that

28   the statute has two disjunctively worded phrases ("person or immediate presence" and "force or

United States District Court
Northern District of California

17

1    fear") but concluded that the phrases "are alternative means, not alternative elements" and do not

2    render the statute divisible. *Dixon*, 805 F.3d at 1198. "To return a guilty verdict on a [California

3    Penal Code § 211] charge, a jury must find that the elements are satisfied, but jurors need not

4    agree on the disjunctively worded alternatives." *Id.* The government identifies no reason that a

5    robbery charge under section 2112 would operate differently, and I see none. Section 2112 is not

6    subject to the modified categorical approach.

7    **II.       RESIDUAL CLAUSE**

8         Because I find that section 2112 is not a crime of violence under the section 924(c)(3)

9    force clause, I proceed to whether the statute qualifies as a crime of violence under the 924(c)(3)

10   residual clause. Defendants do not dispute that section 2112 robbery, "by its nature, involves a

11   substantial risk that physical force against the person or property of another may be used in the

12   course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Defendants argue instead that the

13   924(c)(3) residual clause is unconstitutionally vague under *Johnson II* and thus cannot be used to

14   support the section 924(c) charge against them.

15        In *Johnson II*, the Supreme Court held that imposing an increased sentence under the

16   ACCA residual clause violates due process. 135 S. Ct. at 2563. That clause defines "violent

17   felony" to include "any crime punishable by imprisonment for a term exceeding one year [that]

18   involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §

19   924(e)(2)(B)(ii). The Court began by explaining that its precedents require application of the

20   "categorical approach" to decide whether a given offense fits within the scope of the ACCA

21   residual clause. 135 S. Ct. at 2557. "Under the categorical approach, a court assesses whether a

22   crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of

23   how an individual offender might have committed it on a particular occasion." *Id.* (internal

24   quotation marks omitted). "Deciding whether the [ACCA] residual clause covers a crime thus

25   requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to

26   judge whether that abstraction presents a serious potential risk of physical injury." *Id.*

27        The Court then identified two features of the ACCA residual clause that "conspire to make

28   it unconstitutionally vague." *Id.* First, it "leaves grave uncertainty" about how to assess the risk

United States District Court
Northern District of California

18

of physical injury presented by a given crime. *Id.* It does so by requiring judges to base their assessment of risk on a judge-imagined "ordinary case" of a crime without instructing on "[h]ow [to] go about deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* The clause thus "offers no reliable way to choose between . . . competing accounts" of what kind of conduct is involved in an "ordinary case." *Id.* at 2558. Second, the clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* The Court concluded that the clause, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, . . . produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

Defendants argue that the section 924(c)(3) residual clause is unconstitutional under the reasoning of *Johnson II*. They point out that the section 924(c)(3) residual clause requires application of the same "ordinary case" analysis undergirding the analysis in *Johnson II*, and that the section 924(c)(3) residual clause contains "essentially the same" language as the ACCA residual clause. *See* Bell Mot. at 6-9; Hart Mot. at 3-4 (Dkt. No. 37). They also note that the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015), have already relied on *Johnson II* to find that 18 U.S.C. § 16(b)'s definition of "crime of violence" is unconstitutionally vague. *See Dimaya*, 803 F.3d at 1120; *Vivas-Ceja*, 808 F.3d at 721-23. 18 U.S.C. § 16(b) defines "crime of violence" as a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C § 16(b). In other words, 18 U.S.C. § 16(b) defines "crime of violence" using exactly the same language as the section 924(c)(3) residual clause.

The government responds that the ACCA residual clause and the section 924(c)(3) residual clause "have different legal definitions," in particular in that the ACCA residual clause is preceded by four enumerated examples of violent felonies. *See* 18 U.S.C. § 924(e)(2)(B)(ii) ("violent felony" means "any crime punishable by imprisonment for a term exceeding one year [that] is *burglary, arson, or extortion, involves use of explosives*, or otherwise involves conduct that presents a serious potential risk of physical injury to another") (emphasis added). In *Johnson II*,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Court noted that these four enumerated crimes contribute to the indeterminacy of the ACCA

2    residual clause because they "confirm[] that the court's task [in applying the categorical approach]

3    goes beyond evaluating the chances that the physical acts that make up the crime will injure

4    someone," and because they "force[] courts to interpret 'serious potential risk' in light of the four

5    enumerated crimes," each of which is "far from clear" with respect to the degree of risk it

6    ordinarily poses. *Id.* at 2557-58 (internal quotation marks omitted).  In addition, the Court rejected

7    concerns that holding the ACCA residual clause unconstitutional would cast doubt on other

8    federal and state laws using terms like "substantial risk," observing that "[a]lmost none of the cited

9    laws links a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561.  The

10   Court then stated: "More importantly, almost all of the cited laws require gauging the riskiness of

11   conduct in which an individual engages *on a particular occasion*.  As a general matter, we do not

12   doubt the constitutionality of laws that call for the application of a qualitative standard such as

13   'substantial risk' to real-world conduct." *Id.* (emphasis in original).

14          With respect to *Dimaya*, the government emphasizes that the Ninth Circuit explicitly

15   cabined its holding to the particular application of the particular statute before it, stating in a

16   footnote that its "decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b)

17   outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. §

18   16(a)'s definition of a crime of violence."  *Dimaya*, 803 F.3d at 1120 n.17.

19          I agree with defendants that the section 924(c)(3) residual clause cannot stand under

20   *Johnson II*.  The core of the *Johnson II* analysis is focused on the indeterminacy created by

21   application of the categorical approach to the broad language of the ACCA residual clause.  Under

22   binding authority in this Circuit, the section 924(c)(3) residual clause, like the ACCA residual

23   clause, requires application of the categorical approach.  *See Amparo*, 68 F.3d at 1225-26; *see also*

24   *Piccolo*, 441 F.3d at 1086-87; *Mendez*, 992 F.2d at 1490-92; *Springfield*, 829 F.2d at 862-63.  Just

25   like the categorical approach applied in the ACCA context – which requires a court to "assess[]

26   whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in

27   terms of how an individual offender might have committed it on a particular occasion," *Johnson*

28   *II*, 135 S. Ct. at 2557 – the categorical approach applied in the section 924(c)(3) context is "in

20

contrast to the circumstantial or case-by-case method that requires the district court to inquire into the facts of the particular case." *Mendez*, 992 F.2d at 1490. And, as *Dimaya* and *Vivas-Ceja* make clear, the differences in the language used in the ACCA residual clause versus the section 924(c)(3) residual clause are not material insofar as the reasoning in *Johnson II* is concerned. *See Dimaya*, 803 F.3d at 1117 ("Section 16(b) gives judges no more guidance than does the ACCA [residual clause] as to what constitutes a substantial enough risk of force to satisfy the statute."); *Vivas-Ceja*, 808 F.3d at 722 ("Just like the [ACCA] residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *see also United States v. Edmundson*, 2015 WL 9582736, at *3-5 (D. Md. Dec. 30, 2015) (holding that the section 924(c)(3) residual clause "suffers from exactly the same double indeterminacy" as the ACCA residual clause and is unconstitutionally vague under *Johnson II*).

The government's emphasis on the four enumerated crimes preceding the ACCA residual clause was addressed in both *Dimaya* and *Vivas-Ceja* and is no more persuasive here than it was in those cases. The Ninth Circuit in *Dimaya* explained

> It is true that, after the Court set forth its holding in [*Johnson II*], it cited [18 U.S.C. § 924(e)(2)(B)(ii)'s] four enumerated offenses in responding to the government's argument that the Court's holding would cast doubt on the many criminal statutes that include language similar to the indeterminate term "serious potential risk." In doing so, however, it stated that while the listed offenses added to the uncertainty, the fundamental reason for the Court's holding was the residual clause's "application of the 'serious potential risk' standard to an idealized ordinary case of the crime." In short, this response clearly reiterated that what distinguishes ACCA's residual clause from many other provisions in criminal statutes was, consistent with its fundamental holding, the use of the "ordinary case" analysis. [*Johnson II*] therefore made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses.

803 F.3d at 1117-18 (internal citations and footnotes omitted). The Seventh Circuit in *Vivas-Ceja* reached the same conclusion:

> The government insists that [*Johnson II*] doesn't compel this conclusion because the Court placed special emphasis on the confusion created by the list of enumerated crimes preceding the residual clause, a feature not present in § 16(b). The government overreads this part of the Court's analysis. As we've explained, the heart of the Court's opinion demonstrates why the two aspects of the residual clause's categorical approach – the ordinary-case

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> determination and the risk assessment – "conspire" to make the clause unconstitutionally vague. Only later did the Court observe that the residual clause also "forces courts to interpret serious potential risk in light of the four enumerated crimes," which are "far from clear in respect to the degree of risk each poses." In other words, the enumeration of specific crimes did nothing to clarify the quality or quantity of risk necessary to classify offenses under the statute. The list itself wasn't one of the "two features" that combined to make the clause unconstitutionally vague.

808 F.3d at 723. Given that the section 924(c)(3) residual clause requires the same categorical approach as 18 U.S.C. § 16(b), and consists of the same language as 18 U.S.C. § 16(b), I see no reason for this analysis to not apply with equal force here. Simply put, "[t]he fact that the language in the [ACCA residual clause] was made even worse by the additional presence of the four listed crimes does not save the [section 924(c)(3)] residual clause from impermissible vagueness." *Edmundson*, 2015 WL 9582736, at *4.

The government's reliance on the cabining footnote in *Dimaya* is also unpersuasive. *Dimaya* held that 18 U.S.C. § 16(b) is unconstitutionally vague because, like the ACCA residual clause, it "requires courts to (1) measure the risk by an indeterminate standard of a judicially imagined ordinary case, not by real-world facts or statutory elements and (2) determine by vague and uncertain standards when a risk is sufficiently substantial." 803 F.3d at 1120 (internal quotation marks omitted). While the Ninth Circuit made clear that this holding does not extend beyond the scope of the facts before it, that does not mean that the reasoning from the decision cannot be applied elsewhere. Here, as in *Dimaya*, the "minor distinctions between the text of the [ACCA residual clause] and that of the [section 924(c)(3) residual clause]" fail to "undermine[] the applicability of [*Johnson II*'s] fundamental holding to this case." *Id.*

I recognize that a number of district courts have declined to extend *Johnson II* to the section 924(c)(3) residual clause. *See, e.g., United States v. Green*, No. 15-cr-00526, 2016 WL 277982, at *3-5 (D. Md. Jan. 22, 2016); *United States v. Tsarnaev*, No. 13-cr-10200, 2016 WL 184389, at *11-14 (D. Mass. Jan. 15, 2016); *Checora*, 2015 WL 9305672, at *9; *Morgan*, 2015 WL 9463975, at *7-9; *United States v. Prickett*, No. 14-cr-30018, 2015 WL 5884904, at *2-3 (W.D. Ark. Oct. 8, 2015); *United States v. Lusenhop*, No. 14-cr-00122, 2015 WL 5016514, at *3 (S.D. Ohio Aug. 25, 2015). Significantly, however, none of these courts (or any of the other

courts that have declined to extend *Johnson II* to the section 924(c)(3) residual clause) are in the Ninth Circuit.  Several have relied on the conclusion that the section 924(c)(3) residual clause, in contrast with the ACCA residual clause, does not require application of the categorical approach. *See Checora*, 2015 WL 9305672, at *9; *Morgan*, 2015 WL 9463975, at *7-9; *Prickett*, 2015 WL 5884904, at *2.  That is not the law in this Circuit.  And some have dismissed *Dimaya* as inapplicable in the section 924(c)(3) context.  I find *Dimaya* highly persuasive here.  The section 924(c)(3) residual clause may not be used to establish that section 2112 robbery is a crime of violence.

### CONCLUSION

Count Two (assault in violation of 18 U.S.C. § 111) charges a crime of violence under section 924(c)(3).  Count Three (robbery in violation of 18 U.S.C. § 2112) does not.  Because the section 924(c) charge against defendants remains supported by a crime of violence predicate, defendants' motions to dismiss Count Four are DENIED.  A status conference is set for February 4, 2016 at 1:30 p.m. in Courtroom 2, 17th Floor.

**IT IS SO ORDERED**.

Dated: January 28, 2016

WILLIAM H. ORRICK
United States District Judge